IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAR-FRESHNER CORPORATION,<br><br>and<br><br>JULIUS SÄMANN LTD.,<br><br>                           *Plaintiffs*,<br><br>v.<br><br>D & J DISTRIBUTING AND MANUFACTURING, INC. d/b/a EXOTICA FRESHENERS CO.,<br><br>                           *Defendant*. | JUDGE CASTEL<br><br>14 CV 391<br><br>Civil Action No.: _____<br><br>COMPLAINT AND JURY DEMAND<br><br> |

Plaintiffs CAR-FRESHNER Corporation ("CFC") and Julius Sämann Ltd. ("JSL") (collectively, "Plaintiffs") allege as follows, with knowledge as to their own actions and upon information and belief as to the activities of others:

### JURISDICTION AND VENUE

1.  This action arises under the federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, and related state statutes and the common law. This Court has jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 1338(a) and (b), and 28 U.S.C. § 1367(a).

2.  Venue is proper in this judicial district.

### PARTIES

3.  Plaintiff CFC is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 21205 Little Tree Drive, Watertown, New York 13601-0719.

4. Plaintiff JSL is a corporation organized and existing under the laws of Bermuda with a place of business at Victoria Place, 31 Victoria Street, Hamilton HM10, Bermuda.

5. Upon information and belief, Defendant D & J Distributing and Manufacturing, Inc. d/b/a Exotica Fresheners Co. ("Defendant") is an Ohio corporation with an address at 1302 Holloway Road, Holland, Ohio 43528.

6. At all relevant times, Defendant has been, and presently is, regularly doing business in the State of New York, and in this judicial district.

## PLAINTIFFS' BUSINESS AND TRADEMARKS

7. For over 60 years, directly and/or by license from JSL and its predecessors, CFC and its predecessors have manufactured and marketed products using distinctive Tree designs as trademarks and corporate identifiers, including the world famous air fresheners in the distinct Tree design shape sold under the LITTLE TREES brand ("LITTLE TREES Air Fresheners").  As a result of their long and extensive sale across the United States, Plaintiffs' products are well known and well received.

8. Plaintiffs' LITTLE TREES Air Fresheners are available in sixty well-known fragrances and distinctive designs, including best-selling scents such as BLACK ICE, ROYAL PINE, and VANILLAROMA.

9. JSL owns several federal trademark registrations for distinctive Tree designs, many of which are incontestable pursuant to 15 U.S.C. § 1065.  Pursuant to 15 U.S.C. § 1115, these registrations are evidence of the validity of the marks, of JSL's ownership of the marks, and of JSL's exclusive right to use and license the marks throughout the United States.  JSL also owns federal trademark registrations for BLACK ICE, ROYAL PINE, and VANILLAROMA.

10.     JSL also owns common law trademark rights in and to its Tree designs and their distinctive product packaging, which are used in commerce in connection with various goods and services.

11.     Plaintiffs' and their respective predecessors' rights in the Tree designs date back to at least as early as August 29, 1952.

12.     The Tree designs are used extensively on a wide variety of air fresheners and related products.  Plaintiffs have spent, and continue to spend, significant amounts of time and money developing, testing and promoting goods sold under the Tree designs, together with their distinctive product packaging.

13.     Plaintiffs insist on rigorous testing and quality control procedures to ensure that the LITTLE TREES Air Fresheners and their distinctive product packaging consistently meet or exceed the company's high standards for fragrance, strength, and longevity.

14.     As a result of the long, extensive and widespread use of the distinctive Tree designs, scent names, and distinctive colors and design of the product and packaging, the general consuming public in the United States recognizes these designs as exclusively associated with Plaintiffs and their high quality products.

15.     Plaintiffs are known for producing high quality, long lasting and affordable products providing the best fragrance experience possible.

16.     Plaintiffs' LITTLE TREES Air Fresheners are marketed with Plaintiffs' distinctive yellow product packaging with the brand name appearing diagonally across the top, with Plaintiffs' distinctive Tree design mark in the corner of its prominently yellow packaging as a corporate logo, as depicted below:



17. Plaintiffs' LITTLE TREES Air Fresheners often use either an arbitrary color to correspond to a particular scent or a distinctive shade or design to represent a scent for which there are countless other shades or designs available. Plaintiffs use these scent colors and names in a consistent manner such that consumers have come to recognize the product configuration and packaging as emanating from Plaintiffs.

18. Plaintiffs' distinctive product configuration and product packaging trade dress (collectively, "Plaintiffs' Trade Dress") is depicted below:



19. Plaintiffs' products are sold in most countries throughout the world and appear frequently, together with Plaintiffs' Trade Dress, on television, in movies, and in popular culture as a symbol of high-quality goods.

4

20. The general consuming public associates Plaintiffs, Plaintiffs' distinctive Tree designs, and Plaintiffs' Trade Dress with the concepts of freshness, cleanliness and pleasing scents.

21. The LITTLE TREES Air Fresheners and Plaintiffs' Trade Dress are widely recognized by the general consuming public as designations of the source of Plaintiffs' products.

22. Plaintiffs' distinctive Tree designs and Plaintiffs' Trade Dress are famous throughout the United States.

23. Plaintiffs extensively advertise and promote their LITTLE TREES Air Fresheners and Plaintiffs' Trade Dress in the marketplace and on the Internet.

24. The Tree designs and Plaintiffs' Trade Dress are famous under 15 U.S.C. § 1125(c)(1), inherently distinctive and/or have acquired distinctiveness, represent valuable goodwill, have gained a reputation for quality belonging exclusively to JSL, and are widely recognized by the general consuming public of the United States as designations of the source for Plaintiffs' products.

## DEFENDANT'S ACTIVITIES

25. Defendant is a manufacturer and distributor of automotive air fresheners.

26. Defendant's products and services are promoted, distributed, offered for sale, and sold throughout the United States.

27. Defendant has a long history of attempting to free-ride on Plaintiffs' goodwill and reputation by using confusingly similar packaging, scent names, and logos in connection with its competing air freshener products.

28. Defendant's infringing activities date back to at least as early as 1995, when Defendant infringed Plaintiffs' federally registered trademarks, ROYAL PINE and VANILLAROMA.

29. Defendant has been aware of Plaintiffs since at least as early as 1995, when Plaintiffs sent Defendant a letter protesting Defendant's infringement of Plaintiffs' rights in the ROYAL PINE and VANILLAROMA trademarks.

30. Plaintiffs again sent a letter to Defendant in 2003 protesting Defendant's infringement of Plaintiffs' rights in an earlier version of Plaintiffs' distinctive yellow product packaging trade dress.

31. At that time, Defendant's packaging mimicked precisely the yellow background, three red horizontal bars, and the large numeral characteristic of Plaintiffs' Trade Dress, which Plaintiffs adopted and used for several years:

 

Plaintiffs' Prior Product         Defendant's Prior Infringing
Packaging Trade Dress              Product Packaging

32. Defendant agreed in a letter dated January 8, 2004 to revise its product packaging, and confirmed in a letter dated March 11, 2005 that the product packaging was revised.

33. In 2011, Plaintiffs filed an action against Defendant seeking injunctive and equitable relief for Defendants' infringing use of the scent names "Black Ice," "Icee Black," and "Icey Black" in violation of Plaintiffs' rights in its trademarks BLACK ICE and ICE BLUE. *CAR-FRESHNER Corp. and Julius Sämann Ltd. v. D & J Distributing and Manufacturing Inc.*

6

*d/b/a Exotica Fresheners Co.*, No. 7:11-CV-617 (NAM/ATB) (N.D.N.Y. filed July 3, 2011) [hereinafter the "Prior Action"].

34. On May 16, 2012, the Court in the Prior Action entered a consent judgment in the Prior Action which set forth stipulated facts and permanently enjoined Defendant from, *inter alia*, violating Plaintiffs' BLACK ICE and ICE BLUE marks, the trade dress associated therewith, and from adopting or using any colorable imitation(s) thereof.

35. Unbeknownst to Plaintiffs, at the time Plaintiffs were resolving the Prior Action, Defendant revised its product packaging to resemble Plaintiffs' Trade Dress with the brand name appearing diagonally across the top, and has incorporated a small green tree logo in the corner of its prominently yellow packaging in a manner confusingly similar to Plaintiffs' use of its Tree Design Mark as a corporate logo. Plaintiffs' Trade Dress and product packaging are compared to Defendant's prior product packaging and current product packaging below:





Plaintiffs' Current Product Packaging Trade Dress     Defendant's Current Product Packaging     Defendant's Prior Product Packaging

36. Defendant has systematically copied Plaintiffs' Trade Dress, using identical or nearly identical color and name combinations for Defendant's infringing air freshener products. Plaintiffs use an arbitrary color to correspond to a particular scent or a distinctive shade or design to represent a scent for which there are countless other shades or designs available, and Defendant has used these same colors and shades for corresponding scents despite their arbitrary

nature. A side by side comparison of Defendants' infringing line of air fresheners (hereinafter, the "Infringing Product Packaging and Configuration") with Plaintiffs' Trade Dress can be seen below:



37. Among the Defendant's Infringing Product Packaging and Configuration are air freshener product configurations that do not include white markings differentiating the textured trunk, coconuts, and leaves of the palm tree to indicate to consumers that the air freshener shape is intended to represent a palm tree. Such air freshener product configurations, including those shown below, are not identifiable as palm tree shapes, and are especially confusingly similar to Plaintiffs' product configuration trade dress:

8

 

LITTLE TREES "Vanilla Pride"   Exotica's "Flag Vanilla"
      Air Freshener               Air Freshener

38. On April 9, 2013, Plaintiffs sent correspondence to Oussama Elassir, President and Principal of Defendant, protesting Defendant's use of the Infringing Product Packaging and Configuration and inviting him to engage in good faith discussions in the interest of finding an amicable resolution the parties' dispute. To date, the parties have been unable to reach a resolution.

39. The Infringing Product Packaging and Configuration is used in connection with Defendant's air freshener products which are distributed, promoted, offered for sale, and sold throughout the United States.

40. The Infringing Product Packaging and Configuration makes use of Plaintiffs' Trade Dress without permission, authorization, or license from Plaintiffs.

41. Defendant was aware of Plaintiffs and Plaintiffs' Trade Dress when it designed, sourced, distributed, promoted, offered for sale, and sold goods in connection with the Infringing Product Packaging and Configuration.

42. Defendant's unauthorized use of Plaintiffs' Trade Dress in connection with Defendant's goods is intentionally designed to create an association with Plaintiffs and to confuse and deceive consumers into the mistaken belief that goods sold in connection with the

9

Infringing Product Packaging and Configuration originate from, are authorized or endorsed by, or are otherwise connected with Plaintiffs.

43. Defendant's unauthorized use of Plaintiffs' Trade Dress falsely designates the origin of Defendant's products and constitutes false description and representation to the effect that goods sold in connection with the Infringing Product Packaging and Configuration are genuine products sold by Plaintiffs, or that Defendant or the Infringing Product Packaging and Configuration are authorized or endorsed by Plaintiffs, or are otherwise connected with Plaintiffs.

44. As a direct result of the unauthorized use of the Infringing Product Packaging and Configuration, both wholesale purchasers and end-consumers familiar with Plaintiffs' goods are likely to incorrectly assume that the Infringing Product Packaging and Configuration originated from Plaintiffs, that there is an affiliation between the parties, or that Plaintiffs have sponsored, endorsed, or approved the Infringing Product Packaging and Configuration and/or goods sold in connection therewith.

45. Defendant, by its acts complained of herein, has infringed Plaintiffs' Trade Dress, diluted the distinctive quality of Plaintiffs' Trade Dress, unfairly competed with Plaintiffs in the marketplace, and otherwise improperly used the reputation and goodwill of Plaintiffs to promote its goods, which are not authorized, approved, licensed, produced, or sponsored by Plaintiffs.

46. The aforesaid acts of Defendant have caused and—unless restrained and enjoined by this Court—will continue to cause irreparable damage, loss, and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I
### Trademark and Trade Dress Infringement and Unfair Competition (Federal)

47. Plaintiffs hereby incorporate the allegations of paragraphs 1 through 46 by reference as if set forth in full herein.

48. Defendant's unlawful and improper actions, as set forth above, are likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of Defendant's goods and/or services, and to falsely mislead consumers into believing that Defendant's Infringing Product Packaging and Configuration originate from, are affiliated or connected with, or are approved by, Plaintiffs.

49. Accordingly, Defendant's activities constitute infringement of Plaintiffs' Trade Dress, and unfair competition in violation of 15 U.S.C. § 1125(a).

50. Defendant's acts of infringement and unfair competition have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

51. Defendant has engaged in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

52. Defendant's acts of infringement and unfair competition, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

### COUNT II
### Violation of New York General Business Law § 349

53. Plaintiffs hereby incorporate the allegations of paragraphs 1 through 52 by reference as if set forth in full herein.

54. Defendant's activities constitute deceptive acts or practices in the conduct of business, trade, or commerce, or in the furnishing of services, in the State of New York.

55. Plaintiffs have been injured by reason of Defendant's deceptive acts or practices.

56. Defendant's aforesaid violations of New York General Business Law § 349 have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

57. Defendant engaged in this activity willfully and knowingly, so as to justify the assessment of increased damages against it, in an amount to be determined at trial.

## COUNT III
### Violation of New York General Business Law § 360-l

58. Plaintiffs hereby incorporate the allegations of paragraphs 1 through 57 by reference as if set forth in full herein.

59. Defendant's activities have diluted and are likely to continue diluting Plaintiffs' distinctive trademarks and trade dress. Defendant's activities have injured the business reputation of Plaintiffs, in violation of Plaintiffs' rights under New York General Business Law § 360-l.

60. Defendant's violations of New York General Business Law § 360-l have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

61. Defendant's violations of New York General Business Law § 360-l, have caused Plaintiffs to sustain irreparable harm, for which Plaintiffs have no adequate remedy at law.

## COUNT IV
### Unfair Competition (Common Law)

62. Plaintiffs hereby incorporate the allegations of paragraphs 1 through 61 by reference as if set forth in full herein.

63. Defendant's activities complained of herein constitute forms of unfair competition under New York State common law.

64. Defendant's aforesaid violations of New York State common law have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

65. Defendant fraudulently engaged in this activity willfully and wantonly with morally culpable behavior, so as to justify the assessment of punitive damages against it, in an amount to be determined at trial.

66. Defendant's aforesaid violations of New York State common law, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs CAR-FRESHNER Corporation and Julius Sämann Ltd. demand judgment against Defendant D & J Distributing and Manufacturing, Inc. d/b/a Exotica Fresheners Co.:

A. For a preliminary and permanent injunction against Defendant and each of its affiliates, officers, agents, servants, employees and attorneys, and all persons in active concert or participation with it who receive actual notice of the Order, by personal service or otherwise:

    i. Restraining and enjoining the production, importation, sale, license, distribution, exportation, promotion, and display of the Infringing Product Packaging and Configuration.

    ii. Restraining and enjoining the use of Plaintiffs' Trade Dress, or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of Plaintiffs' Trade Dress without Plaintiffs' permission; or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of Plaintiffs' Trade Dress in communications with public media distributed to or within the United States without Plaintiffs' permission; or in

any other manner suggesting in any way that Defendant and/or its activities, services or products originate from, are affiliated with or authorized by Plaintiffs, or that Plaintiffs and/or their activities, services or products are affiliated in any way with Defendant without Plaintiffs' permission.

        iii.    Restraining and enjoining the use of any other mark, term, slogan, tagline, or phrase without Plaintiffs' permission which suggests or tends to suggest in any way that Defendant and/or its activities, services or products originate from, are affiliated with, or authorized by, Plaintiffs, or that Plaintiffs or their activities, services or products are affiliated in any way with Defendant.

        iv.    Restraining and enjoining the use and/or importation in connection with any goods or services, any false or deceptive designation, description or representation, whether by words or symbols, that suggests or implies any relationship with Plaintiffs or gives Defendant an unfair competitive advantage in the marketplace.

        v.    Restraining and enjoining Defendant from violating New York General Business Law §§ 349 and 360-l.

        vi.    Restraining and enjoining Defendant from engaging in any acts of common law unfair competition which would damage or injure Plaintiffs.

        vii.    Restraining and enjoining Defendant from inducing, encouraging, instigating, aiding, abetting, or contributing in any third party usage of Plaintiffs' Trade Dress.

    B.    That in accordance with 15 U.S.C. § 1118, all materials, packaging, labels, tags, pamphlets, brochures, signs, sales literature, stationery, advertisements, billboards, banners, posters, documents, and the like in the possession or under the control of Defendant and its affiliates, and all plates, molds, matrices, negatives, masters, and other means of making the

same, which might, if used, violate the Order herein granted, be delivered up and destroyed as the Court shall direct.

   C. That in accordance with 15 U.S.C. § 1116, Defendant file with the Court and serve on counsel for Plaintiffs within thirty (30) days after service on Defendant of such Order, or within such extended period as this Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the Order.

   D. For an award of Defendant's profits or other advantages, Plaintiffs' damages resulting from Defendant's unlawful acts set forth herein, and/or a reasonable royalty for Defendant's unlawful use of the Tree designs, in an amount to be proven at the time of trial, together with legal interest from the date of accrual thereof.

   E. For an award of treble damages, in an amount to be proven at the time of trial, pursuant to 15 U.S.C. § 1117.

   F. For an award of exemplary and punitive damages and/or increased profits, in an amount to be proven at the time of trial.

   G. For an award of attorneys' fees and disbursements incurred by Plaintiffs in this action.

   H. For an award of costs of this action.

   I. That Plaintiffs be awarded such other and further relief as the Court may deem equitable and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

|  |  |
|---|---|
| Dated: January 21, 2014 | Respectfully submitted,<br><br>By: _____<br>James E. Rosini (JR7791)<br>Michelle Mancino Marsh (MM1494)<br>Natasha Sardesai-Grant (NS4331)<br>KENYON & KENYON LLP<br>One Broadway<br>New York, New York 10004<br>Tel: 212-425-7200<br>Fax: 212-425-5288<br>jrosini@kenyon.com<br>mmarsh@kenyon.com<br>nsardesai@kenyon.com<br><br>*Attorneys for Plaintiffs*<br>*CAR-FRESHNER Corporation*<br>*and Julius Sämann Ltd.* |