UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CAR-FRESHNER CORPORATION and JULIUS
SÄMANN LTD.,

                        Plaintiffs,                          14-cv-391 (PKC)

        -against-                                            MEMORANDUM
                                                             AND ORDER


D & J DISTRIBUTING AND
MANUFACTURING, INC. d/b/a EXOTICA
FRESHNERS CO.,

                        Defendant.
---------------------------------------------------------x

CASTEL, U.S.D.J.

         Plaintiffs Car-Freshner Corporation ("Car-Freshner") and Julius Sämann Ltd.

("JSL") move for summary judgment dismissing the counterclaims of defendant D&J

Distributing and Manufacturing, Inc. ("D&J").  Car-Freshner and D&J both manufacture and sell

tree-shaped disposable air fresheners that are commonly used in automobiles.  The parties'

respective claims and counterclaims assert trademark infringement and dilution under the

Lanham Act and New York law.

         The Court concludes that none of the elements of trade dress asserted by D&J in

its counterclaims are protectable, because they are functional, lacking in distinctiveness, or

abandoned.  Accordingly, the plaintiffs' motion is granted.


BACKGROUND

         Car-Freshner and its predecessors manufacture and market automobile air

fresheners and other products under the brand name "Little Trees."  (Pls.' 56.1 ¶ 1.)  Its air

fresheners are shaped like pine trees, and a pine tree logo serves as the brand's trademark.  (Pls.' 56.1 ¶ 2.)  JSL is the owner of the trademark, and Car-Freshner is the exclusive licensee of the trademark for air fresheners in the United States.  (Pls.' 56.1 ¶ 1.)  Since at least the mid-1970s, Car-Freshner has associated the Little Trees brand with a trade dress consisting of "a bright yellow background with a rendition of the [pine tree logo] in green against that yellow background."  (Pls.' 56.1 ¶¶ 4, 6.)

D&J was founded in approximately 1986, and began selling paper air fresheners during the early 1990s.  (Pls.' 56.1 ¶¶ 16, 18.)  Its air fresheners are shaped like palm trees and are marketed under the brand name "Exotica."  As relevant here, they are displayed for purchase in one of the following ways: (1) in a box intended to be placed on a shelf or countertop ("Counter Box") containing a number of individually packaged air fresheners; (2) on "strip displays," which are long vertical cardboard strips on which two columns of air fresheners are displayed; and (3) on "wide display boards," on which 60 air fresheners can be displayed.  (Pls.' 56.1 ¶¶ 20, 30.)

The plaintiffs commenced this action, alleging that D&J purposefully copied the Little Trees trade dress on its own products, and bringing claims under the Lanham Act and New York law.  (Dkt. No. 1.)  D&J answered and brought four counterclaims (Dkt. No. 9), which it later amended.  (Dkt. No. 21.)  D&J asserts that Car-Freshner's products and packaging infringe D&J's trade dress, specifically, elements of the strip displays, counter boxes, and wide display boards, as well as the color of the "header card" to which individually packaged air fresheners are attached and in front of which they are displayed.  (Pls.' 56.1 ¶ 30.)

The Court previously dismissed D&J's counterclaim under New York General Business Law § 349, but allowed the three remaining counterclaims to proceed.  2014 WL

3900564 (S.D.N.Y. Aug. 8, 2014); (Dkt. No. 35).  The plaintiffs now move for summary

judgment on those counterclaims.  (Dkt. No. 52.)


LEGAL STANDARD

> Summary judgment "shall" be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit

under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On

a motion for summary judgment, the court must "construe the facts in the light most favorable to

the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against

the movant."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014).  It is the initial

burden of the movant to come forward with evidence on each material element of his claim or

defense, demonstrating that he is entitled to relief.  The evidence on each material element must

be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v.

1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the moving party meets its burden,

"the nonmoving party must come forward with admissible evidence sufficient to raise a genuine

issue of fact for trial in order to avoid summary judgment."  Jaramillo v. Weyerhaeuser Co., 536

F.3d 140, 145 (2d Cir. 2008).


DISCUSSION

> D&J's counterclaims are predicated on the alleged infringement of the following

trade dresses (Pls.' 56.1 ¶ 30):

- Two-column strip display: D&J claims that Car-Freshner's use of a two-column strip display infringes the trade dress of D&J's similar two-column strip display.  D&J asserts two different versions of its strip display: in the first, the air fresheners are stapled to the strip, and in the second, they hang from hooks attached to the strip.  (J. Elassir Dep. 241:8–243:6.)

- Counter Box: D&J claims that Car-Freshner's Counter Box infringes D&J's own 24-count Counter Box.  (Id. 243:7–10.)

- Wide display board: D&J claims that Car-Freshner's wide display board infringes D&J's own 60-count wide display board.  (Id. 243:11–23.)

- Header card color: D&J claims that Car-Freshner's use of the color yellow on the surface of the header card against which the individually-packaged air fresheners are displayed infringes its trade dress.  (Id. 237:10–241:2.)

The plaintiffs argue that the strip display and the Counter Box trade dresses are functional, and thus not eligible for protection.  They further argue that all of the asserted trade dresses lack distinctiveness as a matter of law.


I.      Lanham Act Claim

A.      Applicable Law

Section 43(a)(1)(A) of the Lanham Act prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof" that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods."  15 U.S.C. § 1125(a)(1)(A).  The statute is construed as embracing not only word or symbol marks, but also

trade dress.  Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000).  "The concept of

trade dress encompasses the design and appearance of the product together with all the elements

making up the overall image that serves to identify the product presented to the consumer.  These

other elements include the appearance of labels, wrappers, and containers used in packaging a

product as well as displays and other materials used in presenting the product to prospective

purchasers."  Fun-Damental Too, Ltd. v. Gemmy Inds. Corp., 111 F.3d 993, 999 (2d Cir. 1997)

(citation and internal quotation marks omitted).


1.      Functionality

        It is well established that "trade dress protection may not be claimed for product

features that are functional."  TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29

(2001).  This rule "prevents trademark law, which seeks to promote competition by protecting a

firm's reputation, from instead inhibiting legitimate competition by allowing a producer to

control a useful product feature."  Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 164

(1995).  "If a product's functional features could be used as trademarks . . . a monopoly over

such features could be obtained without regard to whether they qualify as patents and could be

extended forever (because trademarks may be renewed in perpetuity)."  Id. at 164–65.

        A trade dress feature is functional "'if it is essential to the use or purpose of the

article or if it affects the cost or quality of the article.'"  TrafFix, 532 U.S. at 32 (quoting

Qualitex, 514 U.S. at 165).  "When considering the functionality of a trade dress, [a court] must

assess the degree of usefulness of the similar features on the competing dress, the degree of

similarity between the non-useful, ornamental features of the packaging, and the feasibility of

alternatives to the useful features."  Fun-Damental Too, 111 F.3d at 1002.  However, the

Supreme Court has explained that in cases involving traditional "utilitarian" functionality, rather than "esthetic" functionality, a court need not consider whether there is a "competitive necessity" for the asserted feature.  TrafFix, 532 U.S. at 33.  A party seeking to enforce an unregistered trade dress, as D&J does here, "has the burden of proving that the matter sought to be protected is not functional."  15 U.S.C. § 1125(a)(3).

### 2.   Distinctiveness

To be eligible for protection, a trade dress must be distinctive of its source.  Wal-Mart, 529 U.S. at 210.  Trade dress can be distinctive in one of two ways.  First, it can be "inherently distinctive if 'its intrinsic nature serves to identify a particular source.'"  Id. (alteration omitted) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)).  Second, it can acquire distinctiveness, "even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product.'"  Id. at 211 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)).  Trade dress in the form of product design, rather than product packaging, can never be inherently distinctive, and is thus protectable only upon a showing that it has acquired secondary meaning.  Id. at 216.  The same is true of trade dress consisting of a single color.  Id. at 211–12.  Trade dress that is "generic" can never receive Lanham Act protection.  Fun-Damental Too, 111 F.3d at 1000.

### B.   Application to D&J's Trade Dress

### 1.   Two-Column Strip Displays

The strip displays at issue are vertical strips of cardboard on which individually

packaged air fresheners are displayed, in one or two columns.  They are typically hung by the cash register.  Most of each strip is obscured by the air fresheners, but the top portion is exposed and features an eye-catching design.  D&J first introduced a two-column strip display, to which the air freshener packages were stapled, in 2000 or 2001.  (Pls.' 56.1 ¶ 32.)  The top portion of this first display showed a woman's head on the left and D&J's green palm tree logo on the right, against a blue background.  (Pls.' 56.1 ¶ 32; King Decl. Ex. D.)  Sometime after June 2012, D&J redesigned its strip display, eliminating the woman's head, moving the palm tree to the left, and adding a row of brightly-colored fruit along the bottom of the exposed portion.  In the new design, the background is no longer blue; instead, it fades from yellow at the top to green at the bottom of the exposed portion.  (Pls.' 56.1 ¶ 35; King Decl. Ex. D.)  D&J also used a version of the strip display, with the woman's head design, from which the air freshener packages were displayed hung on plastic hooks.  (Pls.' 56.1 ¶ 43; King Decl. Ex. F.)  D&J has not used the hook display during the last two to five years.  (Pls.' 56.1 ¶ 44.)

Car-Freshner introduced its two-column strip display, which also uses staples and which they call the "Space Saver," in 2004, and discontinued it in 2012.  (Pls.' 56.1 ¶ 11.)  The exposed portion of the strip shows a large green version of the plaintiffs' pine tree logo against a bright yellow jagged shape suggestive of lightning or an explosion, itself against a red background.  (Perry Decl. Ex. F.)  Car-Freshner also produced a limited run of two-column hook displays as a one-off for Dollar General Stores, which are no longer in use.  (Pls.' 56.1 ¶¶ 12, 45.)  The exposed potion of Car-Freshner's hook display shows a man driving a convertible while his female passenger ecstatically lifts her face and arms skyward, soaking in the sun.  (Perry Decl. Ex. G.)  The bottom of the exposed portion is bright yellow and shows the green pine tree logo.  (Id.)

The plaintiffs spend much of their opening brief attempting to show how individual elements of the strip displays each have a functional purpose.  D&J's principal argument in opposition is that this focus on individual elements misconceives the scope of the functionality inquiry.  It argues that the strip displays "create an overall impression based on color, trademarks, visual impression of the display and the display of the products itself" (Opp'n 3), and that "[i]t is the columns, how the column [sic] are arranged, how the display 'looks' that is critical in this case."  (Opp'n 4.)  It relies on the rule that a court assessing the functionality of a trade dress must ask whether the "particular combination and arrangement of design elements" is functional, rather than limiting itself to analyzing each element individually.  Le Sportsac, Inc. v. K Mart Corp., 754 F.2d 71, 76 (2d Cir. 1985); see also Fun-Damental Too, 111 F.3d at 1002 (requiring a court to weigh "the degree of usefulness of the similar features on the competing dress" together with "the degree of similarity between the non-useful, ornamental features of the packaging").

While that is indeed the law, the burden of persuasion remains on D&J to show that the "particular combination and arrangement" of elements constituting its strip display is non-functional.  See 15 U.S.C. § 1125(a)(3).  As the Ninth Circuit has explained, "where the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional." Leatherman Tool Grp., Inc. v. Cooper Indus., Inc., 199 F.3d 1009, 1013 (9th Cir. 1999). Additionally, where the only similarities between the parties' trade dresses consist of unprotectable elements, a trade dress infringement claim must fail.  See Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 71 (2d Cir. 1994) (finding no confusing similarity where the

only similarities between the asserted trade dress and the accused trade dress were "standard" and "generic" elements).

   D&J's strip display does contain a number of ornamental elements, but the deposition testimony of John and Adnan Elassir, D&J's president and vice-president respectively, reveals that the ornamental elements are not the focus of D&J's infringement claim.[1]  The only ornamental similarities between the two strip displays identified by the Elassirs are the use of a green tree and the color yellow on the top portion of both parties' displays.  (A. Elassir Dep. 66:20–23, 92:24–93:8.)  The plaintiffs have submitted evidence, which is unrebutted by D&J, that Car-Freshner has used a green tree mark against a yellow background since at least 1975, before D&J was founded.  (Perry Decl. Ex. A.)  D&J thus cannot establish priority of use for the ornamental elements it identifies, and consequently cannot receive trade dress protection for them.  See United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 100 (1918) ("as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question"); 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed., updated Mar. 2015) ("in the United States, the rule of priority is that ownership and priority go to the party who was first-to-use").

   The other ornamental similarity the Court can discern between the parties' strip displays is the multicolor effect created by displaying a variety of different air freshener fragrances on one strip.  But the use of different colors to indicate different flavors serves a functional purpose and is thus unprotectable.  See Dippin' Dots, Inc. v. Forsty Bites Distrib., LLC, 369 F.3d 1197, 1203–04 (11th Cir. 2004) (holding that the color of ice cream is functional because it indicates the flavor of the ice cream); Beech-Nut, Inc. v. Warner-Lambert Co., 346 F.

---

[1] John Elassir testified in his individual capacity, and also on behalf of D&J as its designated deponent under Rule 30(b)(6), Fed. R. Civ. P.  (J. Elassir Dep. 6:21–7:1.)

Supp. 547, 550 (S.D.N.Y. 1972) (noting that breath mint colors symbolizing different flavors are "almost as functional as words").

    To the extent D&J seeks protection for the combination of the remaining, non-ornamental elements of its strip display—the use of two columns, the size of the display card, the number of fresheners displayed on each strip, the use of staples and hooks to affix the fresheners—it has not come forward with evidence which, if believed, would entitle it to a finding that the combination is non-functional.  To the contrary, John Elassir extensively testified that the particular strip display format used by D&J and Car-Freshner, in the version that uses staples, solved a "problem" of other types of display.  Although the nature of the problem cannot be exactly determined from the transcript extracts supplied by the plaintiffs, it appears that it related to the ability to display air fresheners in multiples of 10 and 12.  (See J. Elassir Dep. 22:23–23:12 ("Car-Freshner had the board, the 48.  They had always a problem with it.  They couldn't set the pieces because at 48 and it has 10 layers, it comes to 50.  He has always two missing.  Okay? . . .  [I]t's the size of it is how it was designed to work on 48 and 60."); id. 30:2–8 ("The whole configuration . . . 12 layers, where its big board was 10 layers and they had a problem always with it because they couldn't figure it out.").)  The problem's solution, however, was patently "functional"—a method for displaying products in multiples of certain numbers.  John Elassir emphasizes that the problem was difficult for him to solve, (see id. 23:8–9 ("It took me a long time to figure out how to do it."); id. 296:12–14 ("It took me a long time to figure out how to put a 40 with a 60 in the same strip to make it short and that—it took me a while.")), and is indignant at what he apparently regards as Car-Freshner's free-riding on his efforts.  (See id. 30:7–8 ("All of a sudden, boom, in one year he copied me."); id. 298:6–8 ("How did they come up with the same size, exact same size, same configuration and a year later?  He dreamed about

it?").)  But trademark law does not exist to encourage the invention of new methods or

technologies.  See Qualitex, 514 U.S. at 164 ("It is the province of patent law, not trademark law,

to encourage invention by granting inventors a monopoly over new product designs or functions

for a limited time . . . .").  In none of the deposition testimony in the record is the overall format

of the strip display with staples characterized as anything other than a practical solution to a set

of display constraints, and that makes it ineligible for trade dress protection.

    The Elassirs also testified to the functional benefits of their strip display format on

an element-by-element basis.  Using two columns, rather than one, allows a wider variety of

fragrances to be displayed.  (A. Elassir Dep. 96:8–16, 160:12–25; J. Elassir Dep. 24:8–25:5).

The two-column strip display is thus a practical response to the demands of display space near

the cash register: "smaller, more variety."  (J. Elassir Dep. 24:10.)  The size of the strip allows

the display of "the maximum number of products in an efficient small size" (J. Elassir Dep.

322:24–323:9), and is also easier to ship for D&J's distributors.  (J. Elassir Dep. 319:15–320:19;

A. Elassir Dep. 225:8–18.)  The hook display is made out of corrugated cardboard, because "a

flat piece of cardboard wouldn't have enough depth to hold the hooks."  (J. Elassir Dep. 328:3–

12.)  These are precisely the type of efficiencies that may not be monopolized through the use of

trademarks or trade dress.  Granting protection to these elements would confer on D&J a

marketing advantage based not on brand recognition or advertising prowess, but simply on its

right to display its goods more effectively than its competitors.

    D&J also appears to seek protection for the "the set-up" of its hook displays—that

is, the configuration of four hooks set out in two columns.  (A. Elassir Dep. 214:23–216:8; see

also King Decl. Ex. F.)  That "set-up," however, appears dictated by the size of the strip itself,

and would thus qualify as functional.  The hooks themselves are, of course, "essential to the use

or purpose" of the hook display, the purpose of which is to display air fresheners, and they are

thus also functional.  And although the plaintiffs have not argued this specifically, the use of

hooks is "generic" as well: as Adnan Elassir conceded, "a lot of people use hooks to display their

products."  (A. Elassir Dep. 218:16–18.)

     In sum, on this record, no reasonable factfinder could find that D&J has

established priority of use for the few non-functional similarities in the strip displays it identifies.

The rest of what it seeks to protect is "nothing other than an assemblage of functional parts,"

which is itself "designed to result in superior performance."  No reasonable factfinder could

conclude otherwise.  Accordingly, the plaintiffs are entitled to summary judgment on the portion

of D&J's infringement claim that is based on the strip displays.


2.  <u>Counter Boxes</u>

     Both Car-Freshner and D&J sell Counter Boxes of air fresheners that are designed

to be displayed near a cash register.  (<u>See</u> J. Elassir Dep. 340:6–7.)  Car-Freshner claims to have

used these Counter Boxes "since before Defendant sold its first air freshener."  (Pls.' 56.1 ¶ 13.)

D&J introduced its first Counter Box sometime between 2000 and 2005.  (J. Elassir Dep. 168:7–

10.)  Each box contains 24 air fresheners in a single fragrance, standing upright.  The sides of

each box are cut diagonally, exposing a large portion of the fresheners at the front of the box

while securing those at the back.  D&J's Counter Boxes have a card tab that extends above the

back of the box.  In its original incarnation, the tab was purplish in color and displayed the words

"Air Freshener," with no logo or artwork.  (King Decl. Ex. K at 3.)  In 2014, D&J replaced the

tab with a new, bright yellow version that includes a green palm tree logo.  (J. Elassir Dep.

195:16–196:2; King Decl. Ex. M at 3.)

D&J's claim based on its Counter Box fails for essentially the same reasons as its claim based on its strip display.  As explained above, D&J has not established priority of use for the green tree logo on a yellow background used on its 2014 Counter Box.  The rest of the trade dress features it identifies are all functional or otherwise unprotectable.  John Elassir testified that the diagonal cut of the sides of the boxes "help[s] the customer see the product and pull it out of the box more easily."  (J. Elassir Dep. 341:3–15.)  It thus serves a functional purpose, rather than as a source identifier.  John Elassir complained that Car-Freshner copied the size of D&J's Counter Boxes, but also explained that that size, designed to hold 24 air fresheners, was chosen for purely utilitarian reasons: a 36-count box in a single fragrance would display too many fresheners in that fragrance, while a 12-count box would be expensive to produce, as well as more likely to tip over.  (Id. 343:2–19.)  John Elassir also appeared to seek protection for the very concept of a box that is displayed near the cash register.  (Id. 340:6–8.)  The Lanham Act, however, does not protect mere methods or concepts for doing business.  McCarthy, supra, § 8:6. D&J can no more obtain protection for the idea of a Counter Box than it could for the idea of advertising on billboards.  See Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Mgmt., Inc., 226 F.3d 944, 948 (8th Cir. 2000) (holding that the plaintiff could not use trade dress law to obtain "a monopolistic right to put on shows in the Convention Center at particular times of the year"); Nature's Way Prods., Inc. v. Nature-Pharma, Inc., 736 F. Supp. 245, 249 (D. Utah 1990) (holding that the marketing practice of selecting trademarks that are suggestive of the product is not protectable); Revlon, Inc. v. Jerell, Inc., 713 F. Supp. 93, 97 (S.D.N.Y. 1989) (stating that marketing techniques such as displaying products in a separate selling area within a department store are not protectable).

Thus, as with the strip displays, no reasonable factfinder could conclude that the

trade dress underlying D&J's Counter Box claim is anything more than a functional combination of unprotectable elements.  Accordingly, the plaintiffs are entitled to summary judgment on that portion of D&J's claim.

3.     Wide Display Boards

Both Car-Freshner and D&J have at certain times sold "wide display boards" or "display cards," which display several columns of air fresheners in assorted fragrances.  Car-Freshner has used wide boards since the 1960s, and has used a five-column format since the 1980s.  (Perry Decl. Ex. J.)  The header portion of the boards has consistently featured a blonde woman's head against a blue sky with clouds.  In the latest version of the board, introduced in 2010, the plaintiffs' green pine tree logo appears on the header to the left of the woman's head.  (Previously, a larger version of the logo took up a large portion of the entire board, and was partially obscured by the fresheners themselves in the five-column display format.)  In his deposition, John Elassir asserted that Car-Freshner's 2010 board infringed the trade dress of a wide display board used by D&J in the 1990s.  (J. Elassir Dep. 299:12–25, 302:19–303:2.)  That board's header also featured a green tree on the left (in this case, D&J's palm tree logo) against a sky-blue background, as well as a red racecar in the upper-right corner.  (King Decl. Ex. H. at 001449.)

Under 17 U.S.C. § 1127, however, "[n]onuse [of a mark] for 3 consecutive years shall be prima facie evidence of abandonment" of the mark.  The plaintiffs argue (and D&J never contests) that D&J has abandoned whatever rights it may have had in its wide display board's trade dress.  The Court agrees.  The record is devoid of any evidence that D&J has used a wide display board, or a green tree on the left-hand side of a header against a sky-blue background, at

any time since the 1990s.  John Elassir testified that it was "a possibility" that D&J had not sold any wide display boards for the past five years.  (J. Elassir Dep. 309:5–9, 313:13–15.)  Adnan Elassir went further, stating that it had "definitely" been more than ten years since the wide display board was used and "probably" as long as twenty years.  (A. Elassir Dep. 235:3–11.) Adnan Elassir in fact disavowed any claim of infringement based on D&J's wide display board. (Id. at 235:12–16.)  No reasonable factfinder could find in D&J's favor on its claim based on the wide display boards, and accordingly, the plaintiffs are entitled to summary judgment on that portion of D&J's claim.


4.      Yellow Header Card

Car-Freshner's air fresheners are sold individually in a packaging comprising a cardboard "header" card from which the air freshener hangs in a plastic pouch.  (Pls.' 56.1 ¶ 5.) The top of the header card is exposed and branded, but the rest of the card typically has no printing or branding on it and is mostly (but not completely) obscured by the plastic pouch, whose back is an opaque silver.  (Pls.' 56.1 ¶ 15.)  Until 2000, this mostly obscured portion of the header card was red, but in 2000 Car-Freshner changed the color to yellow, "for ease of manufacture and improved shelf display."  (Id.)  D&J claims that this use of yellow infringes the trade dress of their yellow header cards for individually-packed air fresheners.  (See, e.g., King Decl. Ex. G at 003573–93; J. Elassir Decl. Ex. C.)

As explained earlier, a trade dress consisting of a single color cannot be inherently distinctive.  Thus, to receive trade dress protection, D&J must show that its use of the color yellow on its header cards has acquired secondary meaning.  "Secondary meaning is an essentially factual determination, proof of which 'entails vigorous evidentiary requirements.'"

Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1041 (2d Cir. 1992) (quoting

Thompson Med. Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985)).  Moreover, the party

seeking protection must establish that its trade dress had acquired secondary meaning at the time

the alleged infringer began to use it.  PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 564 (2d

Cir. 1990).  Evidence that tends to establish secondary meaning includes evidence of "'(1)

advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited

media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6)

length and exclusivity of the mark's use.'"  Genesee Brewing Co. v. Stroh Brewing Co., 124

F.3d 137, 143 n.4 (2d Cir. 1997) (quoting Centaur Commc'ns v. A/S/M Commc'ns, 830 F.2d

1217, 1222 (2d Cir. 1987)).

       In the face of the plaintiffs' summary judgment motion, D&J has failed to come

forward with evidence creating a genuine issue of material fact on the issue of secondary

meaning.  With respect to the fourth factor, D&J's briefing refers to "millions of dollars in sales"

(Def.'s Br. 5) without specifying a precise figure or a time period.  Adnan Elassir testified that,

over the period from June 2012 to September 2014, D&J sold roughly 450,000 air fresheners

with header cards in the continental United States and Puerto Rico, representing roughly

$140,000 in gross sales.  (A. Elassir Dep. 46:12–47:7; King Decl. Ex. C.)  Without a point of

comparison, however, this information is of little help to D&J.  With respect to the sixth factor,

D&J has submitted evidence showing that it has used a yellow header card since 1990 (J. Elassir

Decl. Ex. C), but has proffered no evidence of exclusivity of use.  Further, D&J's executives

testified that D&J does no advertising in the United States.  (A. Elassir Dep. 80:14–22; J. Elassir

Dep. 14:13–19.)  D&J has submitted no evidence bearing on the second, third, and fifth factors.

On this record, no reasonable jury could conclude that D&J's use of the color yellow on its

header cards had acquired secondary meaning.  Accordingly, the plaintiffs are entitled to summary judgment on the portion of D&J's claim arising from Car-Freshner's yellow header card.

II.    State-Law Claims

        The plaintiffs seek summary judgment on D&J's two surviving state-law counterclaims: one claim under New York's anti-dilution statute, N.Y. Gen. Bus. Law § 360-*l*, and one claim of unfair competition under New York common law.[2]  Both claims fail for the same reason that D&J's Lanham Act claim fails: D&J has not established ownership of a distinctive, non-functional, non-abandoned trade dress.  See Heptagon Creations, Ltd. v. Core Marketing LLC, No. 11 Civ. 01794(LTS)(AJP), 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011) ("In New York, a common law unfair competition claim is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith."); Eyal R.D. Corp. v. Jewelex N.Y. Ltd., 784 F. Supp. 2d 441, 448 (S.D.N.Y. 2011) (requiring, for a common law trade dress infringement claim, that the plaintiff prove distinctiveness and non-functionality); Elements/Jill Schwartz, Inc. v. Gloriosa Co., No. 01 Civ. 904(DLC), 2002 WL 1492197, at *7 (S.D.N.Y. July 15, 2002) ("The plaintiff . . . having failed to demonstrate its ownership of a distinctive mark, its state law dilution claim must also fail."); N.Y. Gen. Bus. Law § 360(i)(1) ("Nonuse [of a mark] for two consecutive years shall constitute prima facie evidence of abandonment.").  Accordingly, the plaintiffs are entitled to summary judgment on the state-law claims.

---

[2] D&J's claim under N.Y. Gen. Bus. Law § 349, which D&J apparently seeks to revive (see Def.'s Br. 8), was dismissed by the Court last year.  2014 WL 3900564, at *5 (S.D.N.Y. Aug. 8, 2014).

CONCLUSION

For the foregoing reasons, the plaintiffs' motion for summary judgment

dismissing D&J's counterclaims is GRANTED in its entirety.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 26, 2015